**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Corey Drew,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Equity Lifestyle Properties, et al.,<br><br>　　　　　Defendants. | No. CV-24-08050-PCT-KML (MTM)<br><br>**ORDER** |

Self-represented plaintiff Corey Drew purchased a lifetime membership "to use all of Thousand Trails RV campgrounds in America and Canada." (Doc. 1 at 7.) After run-ins with employees at two of those campgrounds, Drew was charged with criminal offenses and his lifetime membership was terminated. Drew filed this suit against companies and employees associated with the RV campgrounds, alleging a variety of tort and contract claims. According to defendants, Drew has not stated a claim on which relief can be granted. Defendants are correct.

**I.　Background**

On August 27, 2022, Drew purchased a lifetime membership from non-party MHC Thousand Trails Limited Partnership.[1] (Doc. 9-1 at 9.) That membership allowed Drew to "use all of Thousand Trails RV campgrounds." (Doc. 1 at 7.) The precise relationship

---

[1] The contract is referenced throughout the complaint and is deemed incorporated by reference. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("incorporated by reference" doctrine applies when a complaint refers to documents or if certain documents form "the basis of the plaintiff's claim").

between the RV campgrounds and the companies named as defendants is not explained. Drew describes defendant Thousand Trails as a Maryland corporation owned by another Maryland corporation, defendant Equity Lifestyle Properties. Defendant MHC Property Management ("MHC") "is an indirect subsidiary of Equity Lifestyle Properties." (Doc. 1 at 7.)

In September 2022, while Drew was staying at a Thousand Trails campground managed by MHC, he was approached by a non-party employee of the campground and was told his service dog could not be inside buildings without a service dog vest. Apparently based on that interaction, a "note" was placed in the "secret member notes file" Thousand Trails maintains on each of its members. The note stated Drew was "combative and known to bully/intimidate other members"; "[n]ot nice to staff or anyone if they ask to leash his dog or a dog not allowed in building unless it's a service dog"; and "[s]hows up with a service dog vest on now. Be aware."

On December 7, 2022, Drew was staying at a different Thousand Trails campground and was sitting in the lodge building with his service dog. (Doc. 1 at 8-9.) Defendant Ralph Baker, an employee of Thousand Trails, approached Drew and stated dogs were not allowed in the building. (Doc. 1 at 9.) After Drew explained his dog was a service dog, Baker pointed to a sign stating that all service dogs must wear a vest. (Doc. 1 at 9.) Drew responded service dogs are not required to wear a vest and Baker then stated Drew needed to show proof of his disability to management. (Doc. 1 at 9.)

That same day, Baker wrote a report regarding the encounter that "contained false statements about [Drew]." (Doc. 1 at 10.) Baker provided his report to defendant Scott Woolley, a manager at the campground. (Doc. 1 at 10.) On December 8, 2022, Baker, Woolley, and Steve Bartle (another employee also named as a defendant) met to discuss Drew. During that meeting Baker "made false verbal statements about [Drew]," including statements that Drew was "cursing," "threatening him," "got in [Baker's] face," "was disorderly," had his service dog off leash, and that the dog "charged him." (Doc. 1 at 10-11.)

The next morning, Drew sent multiple text messages to the guest services' number requesting the park manager's name and the name of the employee responding to the text messages. (Doc. 1 at 11.) Bartle responded to the text messages but did not provide the manager's name. (Doc. 1 at 11.) Drew then texted that Bartle's actions were making him feel unsafe and aggravating his PTSD. (Doc. 1 at 11.) Drew also texted, "do not approach me or speak to me or else things may escalate, only management of the park or corporate may email or t[e]xt me." (Doc. 1 at 11.) Woolley and Bartle spoke via phone and decided to call the Yavapai County Sheriff. (Doc. 1 at 11-12.)

Although Woolley and Bartle were aware Drew was in mental distress, suffering from the effects of PTSD, did not want to be approached in person, and only wanted to communicate in writing, they "denied [Drew's] reasonable request [to] be left alone while suffering a PTSD episode." (Doc. 1 at 12.) Drew omits any description of the interaction that "denied his reasonable request [to] be left alone," but the only plausible inference is that some interaction occurred. Drew further explains, during that interaction, Drew "never made a threat of violence towards any Thousand Trails staff," but Bartle made a 911 call to the Yavapai County Sheriff's Office stating that Drew was being "threatening." (Doc. 1 at 12.)

Drew then had another encounter with Bartle "at the ranger station." (Doc. 1 at 13.) Drew asked Bartle for the manager's name. Bartle informed Drew that Woolley was the manager and was in the office, and Drew left "after about two minutes." (Doc. 1 at 13.) Bartle then called 911 a second time and stated Drew had "just been 'threatening' toward Bartle." (Doc. 1 at 12.) In the two 911 calls, Bartle stated Drew was "threatening," "aggressive," and "highly agitated." (Doc. 1 at 13.) Bartle inquired whether deputies were on the way and whether there would be "back up." (Doc. 1 at 13.) The 911 operator asked Bartle how Drew had threatened Bartle and Bartle stated Drew "was saying that [Bartle] was refusing to answer his questions, you're the guy, smug, attitude, this and that and so forth, and highly agitated." (Doc. 1 at 13.) However, Bartle did not "react in a fearful way when speaking with [Drew] at the Ranger Station." (Doc. 1 at 13.)

Approximately ten minutes after speaking with Bartle, Drew went to the office to speak with Woolley about the problems Drew was experiencing with staff. (Doc. 1 at 14.) Drew "did not threaten physical harm to Woolley during this conversation" and "there is no evidence [Drew] ever threatened Woolley with physical harm." (Doc. 1 at 14.) Drew left the office and, while in the parking lot, "was unlawfully detained and arrested by [the] Yavapai County Sheriff Office [("YCSO")]." (Doc. 1 at 14.) Sheriff's deputies spoke with several employees and management during their investigation and, after about 30 minutes, concluded "[Drew] had 'done nothing wrong and things were of a civil nature.'" (Doc. 1 at 14.)

On December 9, 2022, Drew filed a complaint about the incident with the YCSO. (Doc. 1 at 15.) On December 20, 2022, a Sheriff's Office lieutenant "substantiated [Drew's] complaint[,] stating there was unnecessary escalation by sheriff[s] officers and Fourth Amendment violations by YCSO on the morning of December 8, 2022," and stated "he would conduct training with the officers involved in the incident. (Doc. 1 at 15.) Drew was not satisfied with that result and indicated he wished to escalate the complaint further. The lieutenant then "made the decision to retaliate against [Drew] for exercising his First Amendment Right" by complaining about the interaction. (Doc. 1 at 15.) The lieutenant ordered a re-investigation of the campground incident. (Doc. 1 at 15.)

A non-party YCSO officer spoke with Bartle, Baker, another Thousand Trails employee named Dina Harbin, and Woolley. (Doc. 1 at 15.) Bartle made false statements to the officer, including that Drew "got in his face to intimidate Bartle," "was threatening and intimidating toward him," "acted disorderly toward Bartle, and "had been trespassed from [the RV park] on December 8, 2022." (Doc. 1 at 15-16.) Baker made similar false statements and claimed Drew had blocked Baker from exiting the lodge building and was acting in a threatening and intimidating manner, and Drew's dog "charged" him. (Doc. 1 at 16.)

Harbin also made false statements to the officer; "helped prosecute Plaintiff regarding charges related to Bartle and Baker"; voluntarily provided copies of emails

between Drew and Thousand Trails management; and stated Drew had been threatening toward Baker and Drew's dog had charged Baker. (Doc. 1 at 17.) Harbin told the officer that Drew had "repeatedly dumped human waste, aka 'black water,' on the ground in his . . . campsite," but there is "no evidence" he did so. (Doc. 1 at 18.) Harbin also claimed Drew's dog was a "fake" service dog and Drew left dog feces "all over" the campground," but "there is no evidence [Drew] left dog feces in the campground." (Doc. 1 at 18.)

Woolley spoke to the officer and made false statements, contradicted by video evidence, that Drew was disorderly, knocked down Christmas decorations, and "got in [Woolley's] face to intimidate [him]." (Doc. 1 at 19-20.) Woolley confirmed that Thousand Trails management "planned to cancel [Drew's] lifetime membership *without* prior notice" and "made the decision not to inform [Drew] of the cancellation of his membership"; and the Yuma campground manager "has a connection with the local Yuma sheriff." (Doc. 1 at 20.) Drew left the campground on January 4, 2023. (Doc. 1 at 20.)

Defendants' false statements between December 8, 2022, and January 4, 2023, led to the cancellation of Drew's membership. (Doc. 1 at 21.) Drew was accused of violating multiple campground rules and engaging in abusive behavior towards staff, but there is no evidence of this behavior. (Doc. 1 at 21.) On January 4, 2023, non-party MHC Thousand Trails Limited Partnership canceled Drew's membership via email without the required 30 days' notice and without investigating Drew's alleged rule violations. (Doc. 1 at 22.) Non-party MHC Thousand Trails Limited Partnership did not return any funds to Drew for the cancellation of his lifetime membership, which is a transferable asset. (Doc. 1 at 23.)

Based on the allegedly false statements regarding his behavior, Drew was charged with misdemeanor disorderly conduct and threatening and intimidating. (Doc. 1 at 16.) Drew was arrested on February 16, 2023, and released on a personal recognizance bond. (Doc. 1 at 23.) All charges were dismissed on March 1, 2024.[2] (Doc. 1 at 17.)

---

[2] Drew's complaint states the charges were dismissed on March 1, 2022, but based on Drew's allegations in ¶ 273, it appears he intended to state March 1, 2024.

- 5 -

In his complaint, Drew sues:
- Equity Lifestyle Properties, Inc.;
- Thousand Trails;
- MHC Property Management;
- Thousand Trails Security Officers Ralph Kim Baker and Steve Bartle; and
- Thousand Trails Managers Scott Woolley and Dina Harbin.

Drew appears to allege all seven of his claims against all defendants. The seven claims are:
1. Malicious prosecution;
2. Intentional infliction of emotional distress;
3. Defamation with malice;
4. Negligent defamation;
5. Breach of the covenant of good faith and fair dealing;
6. Anticipatory breach of contract;
7. Aiding and abetting tortious conduct.

Drew verified his complaint, asserting his allegations under penalty of perjury. (Doc. 1 at 34.) Drew seeks money damages, declaratory, and injunctive relief.

Shortly after filing the present suit, Drew filed a separate suit against Yavapai County and several of its officers based on his arrest and prosecution from the campground events. The complaint in that suit was also submitted under penalty of perjury but its allegations contradict crucial aspects of Drew's complaint in the current case. (CV-24-8073-PCT-KML, Doc. 1 at 44.)

**II.    Legal Standards**

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are

taken as true and the pleadings construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where the plaintiff is self-represented, the court must "construe the pleadings liberally and [] afford the petitioner the benefit of any doubt." *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010).

**III.  Discussion**

    **A.  Count One – Malicious Prosecution**

To state a claim for malicious prosecution under Arizona law, Drew must allege "damage by a criminal prosecution, which terminated in his favor, with defendant as prosecutor or complaining witness acting without probable cause and with malice." *Bearup v. Bearup*, 596 P.2d 35, 36 (Ariz. Ct. App. 1979). Drew's theory is defendants were "complaining witnesses" and their "false statements and fabricated evidence [were] instrumental in initiating [his] prosecution." (Doc. 11 at 4.) According to Drew, defendants' "fabrications directly led to the charges against him." (Doc. 11 at 4.) But Drew's allegations in another case, submitted under penalty of perjury, establish that is not accurate.

In his companion case against Yavapai County and its officers, Drew recounts the sequence of events that led to his claims in that suit. Drew alleges Bartle made a 911 call to the Sheriff's Office to request a civil escort. (CV-24-8073-PCT-KML, Doc. 1 at 9.) Drew states "[t]here were no crimes reported in the 911 call by Bartle." (CV-24-8073-

PCT-KML, Doc. 1 at 9.) Drew further states the officer who first arrived at the campgrounds did not have any contact with Bartle. (CV-24-8073-PCT-KML, Doc. 1 at 9.) When that officer and another officer eventually located Drew, they "did not have any facts or evidence [Drew] had committed any crime." (CV-24-8073-PCT-KML, Doc. 1 at 11.) The officers then spoke with "[P]ark management," *i.e.* the individual defendants in the present case, and management stated Drew "had not committed any crimes" and that Drew "had a contract to use the park and was not trespassing." (CV-24-8073-PCT-KML, Doc. 1 at 13.) The officers then spoke with each other and "agreed [Drew] had not committed any crimes." (CV-24-8073-PCT-KML, Doc. 1 at 13.)

According to Drew's sworn allegations in his other suit, Yavapai County officials decided to proceed with criminal charges only after Drew complained that certain officers were not going to be disciplined for their behavior at the campground. Drew claims the decision to proceed with charges against him "was in retaliation for [Drew] exercising his First Amendment Rights of redress and freedom of the press." (CV-24-8073-PCT-KML, Doc. 1 at 16.) Crucially, Drew alleges Yavapai County officials "decided the charges to file on [Drew] *before*" defendants in the present suit were even interviewed. (CV-24-8073-PCT-KML, Doc. 1 at 17-18) (emphasis added). In effect, Drew alleged the "criminal prosecution" supporting his malicious prosecution claim was due to Yavapai County officials' desire to retaliate against him and not due to actions by defendants in this case. Drew's opposition to the motion to dismiss confirms this view.

In opposing the dismissal of his malicious prosecution claim against the campground employees and companies, Drew alleges that "[f]rom the perspective of the sheriff department the only service Bartle requested was a civil escort." (Doc. 11 at 5.) Drew does not explain how Bartle could be responsible for "malicious prosecution" if that statement is true.[3] This is not a scenario where it is unclear what transpired and, as a result,

---

[3] Drew also argues Baker and Bartle made false statements when they were interviewed in an attempt to "retaliate" against Drew, and they were "willing participants in the retaliation against [Drew]." (Doc. 11 at 6, 8.) There are no factual allegations establishing Baker and Bartle knew of Drew's alleged protected speech such that they could have intended to "retaliate" against Drew for that speech.

it may be necessary to plead inconsistent theories of liability before pursuing discovery. These specific and sworn allegations cannot be squared with each other.

A claim for malicious prosecution cannot be brought if the decision whether to pursue criminal proceedings "is left entirely to an officer or prosecutor's discretion." *Adams v. Estrada*, No. 2 CA-CV 2013-0074, 2014 WL 265660, at *3 (Ariz. Ct. App. Jan. 23, 2014). Drew has sworn to a version of facts that it was the officers, without any input from defendants, that caused Drew's criminal prosecution. Drew acknowledges as much in his opposition to the motion to dismiss. Drew's claim for malicious prosecution against these defendants is dismissed without leave to amend.

### B. Count Two – Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires a showing that a defendant engaged in "extreme and outrageous" conduct; a defendant acted with the intent "to cause emotional distress or recklessly disregard[ed] the near certainty that such distress [would] result from [the] conduct"; and "severe emotional distress indeed occur[ed]." *Christakis v. Deitsch*, 478 P.3d 241, 245 (Ariz. Ct. App. Dec. 1, 2020). Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969) (citation omitted), *overruled on other grounds by Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d 781 (Ariz. Ct. App. 1989). Such conduct "must completely violate human dignity" and "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Pankratz v. Willis*, 744 P.2d 1182, 1189 (Ariz. Ct. App. 1987) (citation omitted). It does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Duhammel v. Star*, 653 P.2d 15, 18 (Ariz. Ct. App. 1982) (citation omitted), *overruled on other grounds by Godbehere*, 783 P.2d 781.

Drew's facts, if true, possibly demonstrate callousness and poor behavior on the part of defendants. Drew alleges defendants made false statements to the police, required

Drew's dog wear a service vest, and canceled his lifetime membership. But this is not the type of conduct that goes "beyond all possible bounds of decency," or completely "violate[s] human dignity" and "strike[s] to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *See also Adams*, No. 2 CA-CV 2013-0074, 2014 WL 265660, at *8 (rejecting claim for intentional infliction of emotional distress based on defendant "making purportedly false statements to the police officer" that led to criminal charges against the plaintiff). This claim is dismissed without leave to amend.

### C.   Counts Three and Four – Defamation

Defendants contend Drew's defamation claims (Counts Three and Four) are barred by Arizona's one-year statute of limitations and, if timely, Arizona law provides absolute immunity against defamation claims of this sort. The Arizona Court of Appeals has explicitly held that "putative crime victims in Arizona are entitled to absolute immunity when they complain to police." *Ledvina v. Cerasani*, 146 P.3d 70, 75 (Ariz. Ct. App. 2006). That immunity applies even to "intentionally false and malicious defamatory statements." *Id.* Defendants are immune from liability for defamation in the context Drew alleges and the timeliness of the claims is irrelevant. The defamation claims are dismissed without leave to amend.

### D.   Counts Five and Six – Breach of Implied Covenant of Good Faith and Fair Dealing and "Anticipatory Breach of Contract"

Drew's contract-based claims are based on his belief that defendants cancelled his lifetime membership in a manner the contract did not permit. Both types of contract claims Drew asserts must be brought against a party to the relevant contract. *See Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002) ("The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement."). The contract at issue was between Drew and non-party MHC Thousand Trails Limited Partnership. (Doc. 9 at 7.) Because Drew has not

named MHC Thousand Trails Limited Partnership as a defendant, the contract-based claims are dismissed without leave to amend.

### E. Count Seven – Aiding and Abetting Tortious Conduct

To state a claim of aiding and abetting tortious conduct, a plaintiff must allege the primary tortfeasor committed a tort that caused injury to the plaintiff, the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty, and the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach. *See Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust*, 38 P.3d 12, 23 (Ariz. 2002). Drew alleges "Defendant[]s engaged in tortious conduct . . . including acts of defamation, intentional infliction of emotional distress, and malicious prosecution." (Doc. 1 at 31.) Because the underlying tort claims have been dismissed, there is no possible basis for the aiding and abetting claim. *See Taraska v. Brown*, No. 1 CA-CV 18-0714, 2019 WL 6320968, at *4 (Ariz. Ct. App. Nov. 26, 2019) (dismissal of aiding and abetting claim proper where there was no "underlying tort").

## IV. Leave to Amend

For the foregoing reasons, Drew's complaint is dismissed for failure to state a claim. Drew is not granted leave to amend because the flaws are not merely technical deficiencies that might be cured by amendment. For example, the defamation claims are barred by absolute immunity and no additional allegations could render those claims viable. Attempting to sue defendants, Drew alleged one version of facts under penalty of perjury and then, to sue Yavapai County officials, Drew alleged a diametrically opposed version of facts under penalty of perjury. In these circumstances, the court need not grant leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 n.8 (9th Cir. 2000) ("When a case may be classified as frivolous or malicious, there is, by definition, no merit to the underlying action and so no reason to grant leave to amend.").

/

/

1   Accordingly,

2   **IT IS ORDERED** Defendants' Motion to Dismiss (Doc. 9) is **GRANTED.**

3   **IT IS FURTHER ORDERED** this action is dismissed with prejudice and the Clerk of Court must enter judgment accordingly.

5   Dated this 17th day of March, 2025.

Honorable Krissa M. Lanham
United States District Judge